## In the Matter of BRADFORD'S WILL.

Under the 13th section of the act in relation to Registers of Wills, on the allegation of matters of fact, touching the validity of a supposed testamentary paper, by those who enter a caveat, the Register, if required, is bound to grant an issue to the Common Pleas. He has no discretion: the party claiming the issue can demand it as an absolute right.

When a case comes before a Register's Court, on any question cognisable before that tribunal, an issue can only be demanded when facts are alleged and denied. To entitle either party to an issue, there must be disputed facts before the Court. And the fact disputed must be a material fact in controversy, and so regarded by the Court. The materiality of such fact, the Court must, in the first instance, judicially determine. Their decree in such a case is subject to review by the Supreme Court. No issue will be awarded by the Register's Court when only principles of law arise on admitted facts. Mere allegation or assertion that the paper offered is not the last will of the deceased, is not sufficient; some *fact* must be stated as the ground of such allegation; all such facts should be stated in writing. Some material fact must be specifically stated in writing as the basis of an issue.

To make a subsequent revoke a prior will, the former must either expressly revoke the latter, or the two must be incapable of standing together.

If a subsequent testamentary paper be but partially inconsistent with one of earlier date, and contains no express clause of revocation, then that which is later, will revoke the prior as to those facts which are inconsistent.

When the *last will* is silent as to any intent to revoke a former testament, and there is only a partial contrariety in the disposition of the property of the testator manifested in the instrument, then nothing exists from which a Court can pronounce a total revocation.

Lands in Pennsylvania being assets for the payment of debts, it would seem that a Register could and ought to admit to probate a paper writing purporting only to pass lands by its provisions.

*Feb.* 15. THE facts which gave rise to this controversy, were these: Thomas Bradford, of the city of Philadelphia, printer, made a will on the 12th of March, 1821, relating to real and personal estate.—On the 27th of May, 1835, he made another will, relating to personal estate only. Both of these wills were found among his papers after his death, which occurred May 7th, 1838. The will of 1835 was proved immediately after the decease of the testator, and letters testamentary were granted to Thomas Bradford, as executor.

In the case of Bradford *v.* Bradford, reported 6 Wharton, 236, the character of the will of 1835 was in issue, and it was decided by the Supreme Court that this will of 1835 related only to, and conveyed solely, the *personal estate* of the testator; there being no words of revocation of other wills to be found, either in the body of the will, or in the codicil, nor any words such as " This is my last will and testament," or " I make or declare this as my last will and

testament," but simply signed by the deceased, and in his hand-writing. After the decision of the Supreme Court, the will of the 12th March, 1821, was deposited in the Register's office, and offered to be proved as the last will and testament of Thomas Bradford, as to his real estate. The Register refused to receive it, or have the paper proved as such. The will was deposited with that officer by Thomas Bradford, son and executor of the testator, who found the same among the papers of the deceased; and when he so deposited the paper for probate, he gave notice thereof to the representatives of the deceased, who claim as heirs-at-law and devisees. On the refusal of the Register to grant probate of the will, Thomas Bradford entered an appeal to the Register's Court. When the Register's Court was convened, and the cause called up for hearing, and simply opened by the counsel of the appellant, the counsel for the appellee demanded an issue as a matter of right, without alleging any statement of disputed facts, or giving to the Court any facts which were in controversy between the parties. The right to demand an issue to the Common Pleas without there being disputed facts, was then argued by the counsel of the respective parties. After argument, the opinion of the Court was given by the Judges of the Court of Common Pleas on this point.

At a subsequent term the cause was fully argued on the main question, as to the admission of the will of 12th March, 1821, to probate, by *V. L. Bradford* and *G. Mallery*, Esqs., for the appellants, and Messrs. *Campbell* and *Meredith* for the appellees.

It was contended by the counsel for the appellant that this was a good subsisting will of real estate, because the words are clear and plain in relation to a devise of real estate in various parts of it. That it was found among the papers of the testator, after his decease, uncancelled, and could be shown to be in his handwriting. That it is a good subsisting will in writing concerning real estate, unrepealed or altered by any other will or codicil in writing, or other writing declaring the same executed in the same manner.

That the Register of Wills has in Pennsylvania probate of wills, relating to real estate. His jurisdiction is not confined, as that of the Ordinary in England, to the mere granting of letters of administration, and the probate of wills to the personal estate: Cited Act of 15th March, 1832, §§ 5, 7, 8, 13, and 17; 5 Rawle, 80; 1 Stark. Evid. 287. They contended that both wills could stand together, the one of personal, the other of real estate; the latter not

in any respect revoking the former. They cited 2 Black. 500; Conard *v.* Marshall, Cro. Eliz. 721; 2 East, 488; 1 Vesey, 187; 5 Vesey, 280; 7 T. Rep. 138; 2 Salk. 592; 1 Shaw, 537; 3 Mad. 203; Howard *v.* Goodright, Cowp. 877; Lovelass on Wills, 344–5; 3 Wilson, 511–12; Year Book, 2 R. 3, fol. 3; 3 Wils. 497; 2 Black. 937; Lofft, 558; 8 Cow. 56; 9 Ib. 208; §§ 13 & 14 of Act of April, 1833; 2 W. & S. 455; 1 Pick. 563; 1 P. Wm. 342; 5 W. & S. 198; 4 Burr. 251; 2 Lofft, 575; 3 Atk. 798; 2 Dall. 286; 1 Yeates, 87; 4 Ib. 413; 4 S. & R. 193; 5 Ib. 215.

The counsel for the appellees contended that the paper of 1821, and the will of 1835, are entirely independent documents. The one is not a codicil, or in any way connected with the other. That the will of 1835 revoked all former wills of personalty: cited 2 Dallas, 288. They contended that the paper of 1821 could not be admitted to probate:—

1. Because it is not in due form of law.

2. Because there has already been admitted to probate a complete and distinct will of a later date, on which letters testamentary have been granted to the same party that now presents this paper.

3. Because, this paper has been revoked as to realty as well as personalty.

4. Because, even if it is not revoked as to realty, the Register cannot admit to probate a mere devise of real estate: 5 Watts, 377, 399; 2 Vernon, 742; 1 P. Wm. 343; 16 Vesey, 519; Amb. 215; 5 Vesey, 280–2–3; 5 Rawl. 86; Act of 1705, and Act of 1832, § 17.

The following opinion was delivered by

KING, President.—There are many points of resemblance between proceedings for the probate of wills as they exist in the English Ecclesiastical Courts, and those prescribed by the statutes and usages of Pennsylvania.

The probate (*probationum receptio*) in *common form* of the Ecclesiastical Courts, is like to the *ex parte* probate granted by our Registers on the production of a testamentary paper, and the examination of the witnesses adduced by the party propounding it to prove its due execution.

The ecclesiastical probate in *solemn form* is a proceeding in which all parties, who would have represented the alleged testator had he died intestate, are made parties to the suit, and the probate is granted or refused after a full investigation of all the allegations of fact or law urged for or against a decree giving validity to the will. This

procedure is analogous to that indicated by our Act of Assembly and the usage under it, where a party in interest files a *caveat* against the Register's granting probate of an alleged will, until he has noticed all parties claiming to be heard in opposition to such grant.

The peculiarity of our system is the right of trial by jury given to the party contesting a testamentary writing. This right of trial by jury is given as well on the occasion of the propounding of the will for probate to the Register, who is with us the tribunal of the first instance ; as· when on appeal the controversy reaches the Register's Court, which is the immediate revisory tribunal of the judicial acts of the Register. But the right to claim a trial by jury is not precise and identical, as to the time and manner of claiming it, in the two forums. The fact of this difference is apparent from the perusal of the 13th and 41st sections of the "Act relating to Registers and Registers' Courts." The reason of the diversity also seems manifest. The 13th section declares that " Whenever a *caveat* shall be entered against the admission of any testamentary writing to probate, and the person entering the same shall ALLEGE, as the ground thereof, any matter of fact touching the validity of such writing, it shall be lawful for the Register, at the request of any party interested, to issue a precept to the Common Pleas, directing an issue to be formed on said fact or facts." The words " shall be lawful," in this section, according to well settled rules for the construction of statutes, give the party claiming the issue the absolute right to it, and leaves no discretion in the Register : 6 Bac. Abr. 379 ; Salk. 609 ; Com. Dig. vol. 5, 330, Parl.

The *allegation* of the existence of matters of fact touching the validity of the supposed testamentary paper, and the *claim* of an issue for the trial of such alleged facts by jury, arrest the further functions of the Register until such facts are determined by the trial. In other words, it transfers the contestation of the factum of the will, the decision of the facts involved in the probate in solemn form, from the Register to a jury acting under the supervision of a court of law.

When, however, the parties to any proceeding before the Register do not think fit to demand an issue from him, but abide by his decision, which is removed to this Court by appeal, a different system for the obtaining of a trial by jury is marked out ; one more analogous to the ordinary course of judicial proceedings, where a Court requires the aid of a jury in determining on litigated facts. "Whenever," says the 41st section of the act, " *a dispute upon a*

*matter of fact* arises BEFORE any Register's Court, the said Court shall, at the request of either party, direct a precept for an issue to the Court of Common Pleas for the trial thereof." This obligation to award an issue does not refer simply to a testamentary cause, as in the case of Registers, but to any contest coming before a Register's Court, where disputed facts arise in the course of the litigation. In other respects, the two systems differ. The Register *must* award an issue on the mere allegation of a party requiring it, that facts touching the validity of a will are the grounds of his exception to its admission to probate. Where such facts are alleged as the basis of the exception to a will, and an issue for their trial is demanded, the Register's authority is arrested *in limine*. His functions are suspended until the primary inquiry is made in the manner prescribed by law. But in the case of proceeding in a Register's Court sitting to revise the judicial acts of a subordinate tribunal, the case is different. It is when " a dispute arises before the Court upon a matter of fact," that the Court are estopped from determining it themselves, and required, at the request of either party, to refer it to a jury. Although the act does not say so in words, it must mean that the disputed fact on which an issue is claimed must be a material fact in the controversy, and be so regarded by the Court. This materiality the Court must, in the first instance, judicially determine; their decree, however, in this particular, as in all others, being subject to the correction of the tribunal of the last resort. In equity, the refusal of an issue, where it ought to have been granted, is ground for appeal: Hampson *v.* Hampson, 1 Ves. & B. 43; Neol *v.* Vaughin, 2 Dow. & Clark, 420.

The " dispute as to facts" must arise when the case is on hearing before the Court. This is the time for claiming the issue, and the time when the Court is to judge whether there are truly any facts in dispute; and whether, if so, they are at all material to a just determination of the question before the Court. What a party may choose to call disputed facts, may, if the Court proceeds, never appear in proof, or may be wholly immaterial and irrelevant to the question before the Court. If we construe this law to mean that when, *on the hearing* of any cause before a Register's Court, there *actually arise* disputed facts, material to the very question involved in the controversy, the Court must award an issue at the request of either party for a trial by jury; we accord all the rights given by the law to the one party, without doing injustice to the other. But if we adopt the construction of the appellees, and hold, that, before

O

we proceed to the examination of the case, either party may arrest our action upon a mere allegation of the existence of any disputed fact his imagination or his prejudices may conjure up; it is plain to perceive that there will be introduced into the proceedings of a tribunal, required by the nature of its jurisdiction to act with promptitude and vigour, a terrible element of procrastination and delay. An issue at law, obtained at the mere request of a party, without showing to the Court in any way the necessity for it, followed by the bills of exception taken on the trial, writs of error, and all the other instruments for delay employed in common-law proceedings, would afford to an excited suitor in this Court a most effectual means of imposing on his adversary useless, burdensome, and oppressive litigation. These evils are avoided by the construction adopted by us of the 41st section of the Act, in holding that a Register's Court is not bound to award an issue until, after a cause having progressed before them, it becomes manifest that its just determination involves the decision of disputed facts material in their influence. When that state of things arises, either party may withdraw the decision on such facts from the Court to a jury, and the Court must stay its action until informed of the truth of the controverted facts by a verdict. But if no disputed fact arises, or none deemed by the Court material to the solution of the legal principles involved in the litigation, the Court must proceed, and determine the cause.

Issues directed by courts of law and equity are familiar things with us. But this is the first time in which it has been suggested, that any court would invoke the aid of a jury to assist them in the decision of material controverted facts, until the actual existence of such controverted facts was first shown to them by other evidence than the mere allegation of a party. To enable them to award the issue, the Court must know the precise point of dispute, and that can only be known from the evidence laid before them, or at least by an affidavit of the party asking the issue, setting forth with clearness and precision a state of facts, irreconcilable with those alleged by his opponent.

It may be said, that, in the case of the Register taking probate of a will, the mere request of a party in interest may withdraw the decision from him and transfer it to a court and jury, and all the inconvenience deprecated by us must follow. To this it is replied: first, that the Act of Assembly is so express in this case, that no room for any construction against its express words exists. Second, that the 13th section of the Act refers only to testamentary causes,

which, in general, are causes peculiarly proper for the decision of a jury; whereas the 41st section applies to all cases testamentary, and others which may come before a Register's Court on appeal. And, thirdly, the framers of the law were fully aware, that Registers were rarely lawyers, and might, therefore, have deemed it expedient, that any party should have the right to withdraw from the Register, a testamentary cause *in limine:* a reason which could not apply to a Register's Court, constituted as it is of at least two Judges sitting with the Register.

The present state of the controversy is this : The Register having refused to take probate of the will of Thomas Bradford, dated March 12, 1821, on the distinct ground that said will was revoked by a later will dated in 1835, we have reversed his decree and determined that probate of the prior will ought to be granted. By the 39th section of the Act "relating to Registers and Registers' Courts," we *may* and *shall* do all such judicial acts on matters lawfully brought before us, as belong, and of right ought to belong to the office of Register. We, therefore, take up the case at the point the Register left it, and being of opinion that probate of the will of 1821 was illegally refused by him, we will proceed to do what he ought to have done, and take the probate. Before decreeing for the validity of the paper, we will hear all proofs and allegations that either party may interpose for or against such a decree. If, during the contestation, material disputed facts arise, and either party requires an issue for the decision of such facts by a jury, we will award it. But in the present state of the proceedings, before we have moved in the cause, we regard the requisition for an issue premature and inadmissible.

The form, too, in which it is asked, seems too vague and imprecise, even if otherwise admissible.                    Issue refused.

The following opinion was delivered by

PARSONS, Judge.—I concur entirely in the opinion just delivered by Judge King, and I think, on another ground, the issue now requested, and in the form applied for, cannot be granted; and it necessarily springs from the principles laid down in the opinion of the President Judge.

If an issue to the Common Pleas is not to be directed, unless facts, proper for the determination of a jury, are before the Register's Court, then I conceive, in this application, no *fact* has been alleged by the counsel for the heirs, which would, according to the Act of Assembly, that controls the action of this Court, justify us in directing such issue to the Common Pleas.

It must be conceded that the issue can never be directed, except to try disputed facts ; and can never be granted for a jury to decide principles of law, which arise on admitted facts ; or on the mere allegation· of counsel, nor on mere assertion. There must be a clear intelligble statement of a fact or facts, which are controverted between the parties, before a Register, or Register's Court, can grant such an issue.

The 13th section of the Act of 15th March, 1832, expressly declares, that, " whenever a *caveat* shall be entered against the admission of any testamentary writing to probate, and the person entering the same shall allege, *as the ground thereof, any matter of fact* touching the validity of such writing, it shall be lawful for the Register, at the request of any person interested, to issue a precept to the Common Pleas, &c., directing an issue to be formed upon said fact or facts," &c. The section then proceeds and gives the form of the precept, and therein requires that the *matters of fact objected*, shall be embodied in the precept. This form of precept further restrains the proceedings of the Court of Common Pleas, to the merits of the controversy between the said parties, and such others as shall be brought in.

The 41st section provides that whenever a dispute upon a matter of fact arises before any Register's Court, the said Court shall, at the request of either, direct a precept to the Court of Common Pleas, &c., in the *form* hereinbefore prescribed for the direction of Registers, changing such facts thereof as should be changed, according to the circumstances of the case, &c. Hence it is clear that the substance of the precept must be the same when directed from the Register's Court, as it would be if directed by the Register ; and must be based on a similar controversy between the parties, to wit, a statement of facts on which the allegations of the party against the validity of the will are grounded.

From a fair reading of the 13th section of said Act, when any one enters a *caveat* against admitting a will to probate, he must state some fact on which it is founded; that he cannot rest on mere allegation or assertion ; that the paper is not the last will of the deceased, when it appears on its face to be signed by the testator ; he must state some fact on which he grounds such allegation. If the objector entertains the opinion that the testator was insane at the time of the apparent execution of it, he is bound to state that as a fact on which to demand the precept to the Common Pleas, before the Register can issue the same. If the allegation before the Register is that the paper writing is not the last will

and testament of the deceased, because the party believes it was procured by duress, fraud, imposition, undue influence exercised over the mind of the deceased by a third person, or for any other cause, he is, in my opinion, bound to state in writing before the Register, the fact on which he grounds such allegation. It is manifest that the legislature never intended to require the Register to grant to the objector against a will on issue on mere asseveration, or loose statements made by counsel, or that those who desire to controvert the validity of a will have only to enter in the Register's office, and file in writing, nothing but a flat denial that such paper is the last will and testament of the deceased, or even, to use a little more formal language, only to say, "this is not the last will of the deceased; it was never made, executed, published, or declared by the deceased as his last will;" when the paper on its face purports to be made, executed, published, and declared by the deceased to be his will. They say the issue shall be granted when any "*matter of fact is alleged as the ground thereof;*" and undoubtedly intended that some fact should be stated to support the assertion made, before the Register would be justified in issuing his precept.

I do not at present say, that *all* the facts which may be alleged against the validity of a will should be stated before the Register, in order that a precept could issue; or that no others than those stated in the *caveat* could be introduced into the declaration after the case was entered in the Common Pleas; the present inclination of my mind is that other facts could be alleged in the pleadings, by heirs and relations, who are brought in by process from that Court; but whether the party who entered the *caveat* would be permitted by the Common Pleas to allege additional facts after the cause was entered in that Court, I will not now determine; but I am clearly of the opinion, unless some fact is stated in writing before the Register as the ground for the *caveat*, he has no right to issue his precept; and unless the precept to the Common Pleas contained the assertion of some fact on which the objection to the will was grounded, the Court of Common Pleas would dismiss the case from their record, for the plain reason that it had been improvidently granted by the Register, without there being any matter of fact therein stated as the ground of the controversy between the parties, on which any objection could be founded.

This construction seems to me to be in accordance with every system of judicial proceedings. No assertion is ever regarded in a court of justice, unless founded on some alleged fact. In tribunals,

21          o 2

where there is a semblance of justice being administered between man and man, each is always apprised of some definite fact which his opponent alleges against him. No declaration in any cause is good, unless it states some fact on which the claim is grounded. When the facts are stated on the record, there is usually some certain denial of them, and if a defendant thinks he is not bound to answer that alleged against him, he usually gives some reason for such refusal. And I think these plain principles are to be observed in giving a construction to this law. Therefore, whatever construction is given to the 13th section, applies to the 41st; and I think with increased force; particularly when we adopt the principles contained in the opinion just delivered. We have decided we will proceed to take the testimony of witnesses in relation to the execution of the will, to show by whom it was made, executed, and declared, from the inspection of it; and, until there is some controverted fact, we shall not award an issue to the Common Pleas. Surely then, one party or the other will be compelled to allege a fact which is controverted; and therefore the issue is not to be granted on mere assertion. If allegations are made, we must necessarily require facts also to be stated on which they are founded, otherwise what should we have to send to the Common Pleas for trial?

Is there anything stated in the paper before us, presented by the counsel for James Bradford and others, which will justify this Court in granting the issue now requested?

In my opinion there is no fact stated in that paper to be submitted to a jury, or given with that clearness which would admonish the executor what he should prepare to meet, or inform the Common Pleas what particular fact they must try.

The first assertion made by the counsel for James Bradford is, that the paper was never made, executed, published, or declared by the deceased as his last will. Such language is nothing more than the bare asseveration: "This is not the last will and testament of the deceased." On what ground is this allegation made? If on its face it appears to be the will of the deceased—is signed by him, or signed and sealed by him as now required, and proved by two witnesses, why is not this his will? No matter appearing on the face of the paper, or stated by the witnesses, disputes the conclusion, that the paper writing is what it purports to be. How then must the controversy begin? Surely by those who dispute its validity, alleging some fact against the paper writing. That has not as yet been done in this case.

The second ground on which they request the issue, is put in these words : "That the said paper (if so made) has been in due form of law revoked by a subsequent will in writing, dated in the year 1824." Surely this is not a matter for the decision of a jury. All writings are to be construed by the Court; and whether the will of 1824 revokes the will of 1821, now offered for probate, is a question of law for the Court. This will appear on its face. I know full well, that the intention of a testator to revoke a former will, many times may depend upon a variety of facts and circumstances; change in family relations, or sometimes in property, may establish the revocation of a part, or, perhaps, the whole of a former will. Now, if there are any such facts as to the testator's intention, let them be stated. The allegation now made, shows that the revocation (if any such exists) was in writing; and, of course, is a matter of law for the Court; no *fact* is stated which would establish the revocation.

The third ground is, that the deceased made a will in 1835, revoking the paper now offered for probate. This point has already been decided by the Court on the papers before us, and, of course, there is no fact to be laid before a jury.

The fourth ground on which the issue is requested, is, that "it is not in law or in fact the last will of the deceased." The question of law the Register's Court are bound to decide. No question of fact is alleged or stated, to be submitted to a jury; of course, there is no issue in fact to be sent to the Common Pleas to be laid before them. Perhaps, had the learned counsel stated any fact on which they wished the opinion of a jury, it might be conceded by the counsel who seek to sustain the will, and then all controversy would be ended. Till that statement is made and denied, why should we direct an issue ?

I think these are additional, and to my mind conclusive reasons, why the present request for an issue to the Common Pleas should be refused by this Court. And, therefore, the application as thus presented is now denied.

After a final hearing, the following opinion of the Court was delivered by

KING, President.—Thomas Bradford, by a will, in which he describes himself as seventy-five years of age, made a disposition of his estate, real and personal. This will is signed by the testator There are two codicils annexed to it, one dated March 12th, 1821,

which is also signed by him; the other is without date or signature, but is in the handwriting of the testator. On the 27th of March, 1835, he executed a second will, in which he describes himself as ninety years old. This fixes the execution of the first will to have taken place about fourteen or fifteen years before. The first codicil to the first will being dated March 12th, 1821, also shows the will to have been executed at, or anterior to, this date. Both these wills were found among the papers of the testator, at his decease, in 1838. The will of 1835 only was offered for probate, and letters testamentary were granted thereon to Thomas Bradford, one of the executors named therein, the other executors having renounced. On the 10th of February, 1841, the Supreme Court of Pennsylvania decided that the real estate of the decedent did not pass under this will, the language of it being deemed inadequate in law to operate beyond the personalty. Up to this time, the executor, Mr. Bradford, supposed and acted on the supposition, that the will of 1835 contained apt words to pass both real and personal estate. This will, however, containing no express revocation of all or any antecedent wills, the executor took the ground, that the will of 1821 remains in full force and effect as to the realty, and he accordingly, on the 25th of October, 1841, tendered that instrument to the Register, and asked that he should be permitted to make probate of the same, as part and parcel of the testamentary disposition of Thomas Bradford, deceased. The Register refused the probate prayed for, and the executor took his appeal from the decision to this Court. The question, therefore, for determination is, the correctness or incorrectness of the Register's decree.

The judgment of the Court of the last resort settles the question, that the legal effect of the will of 1835 made it but a will of the personalty. This was ascertained by the Court to be the intention of the testator, as far as could be collected from the expressions used by him in conveying such intention—construing those expressions according to settled rules of law. For all practical purposes, the will of 1835 must therefore be regarded as if it had in so many words expressed its object to be confined to the personal estate of the testator. For it would be a strange course of reasoning, to say that it contains no apt words to pass real estate to the devisees named in it, and yet that those very words would operate to revoke a former will, by the implication arising from the inconsistency of the bequests of the realty in the different wills. There being no express clause of revocation in the will of 1835, its provisions can

only operate to revoke an antecedent will, in consequence of their being inconsistent with the dispositions of such prior will.

To make a subsequent revoke a prior will, the former must either expressly revoke the latter, or the two must be incapable of standing together. If a subsequent testamentary paper be but partially inconsistent with one of earlier date, and contains no express clause of revocation, then that which is later will revoke the prior as to those parts only which are inconsistent: Conrad v. Marshall, Cro. Eliz. 721. It is upon this principle that it has been held, that a subsequent will is no revocation of a former, unless the contents are known; it not being presumed from the mere circumstance of another will having been made, that it revoked a former: Kitchens v. Bassett, 2 Salk. 592. And although a later will be expressly found by a special verdict, yet, if it be also found that it is not known in what the difference consisted, it will not be a revocation of the first: Goodright v. Harwood, Cowp. 87; 7 Bro. Parl. Ca. 344. The doctrine in the Ecclesiastical Courts as to revocations *pro tanto*, is to the same effect: Carstairs v. Pottle, 2 Phil. 30. Roberts, in his Treatise on Wills, vol. 1, 239, thus sums up the doctrine eliminated from a review of the decided cases on this point: "The settled law, therefore, is that a will is not revoked but by necessary implication, so that, where the *subsequent* will or *posterior* act is consistent with a prior will, *or with any part of it*, such prior will remains valid in part or in all, according to the extent to which the dispositions of the party can be effectuated without contradiction or discordancy." Now the contradiction or discordancy between two wills, one of which operates on both realty and personalty, and a latter one only on personalty, is confined solely to the dispositions of the personalty; and to that extent, and no further, is the later a revocation of the former by legal implication. I speak not now of express revocations. Where they exist in wills, they of course nullify former dispositions, whether the will in which such revocation exists, is partial or universal in its application to the estate of the testator.

It is true that revocation is a question of intention. But such intention is to be adequately manifested in the will itself, as must all other expressions of testamentary intention. If the revocation is express, there is no room for any question as to intention; where, however, it is inferential and the result of legal implication, the predicate from which the inference is evolved, must be found in the instrument itself. If the last will is silent as to any intent to revoke a former testament, and there is only a partial contrariety in the

disposition of the property of the testator manifested in the two instruments, then nothing exists from which a Court can pronounce for a total revocation. The Court cannot theorize on such a subject. If the testator has not adequately expressed what an ingenious mind might suppose to be his intention, that is the misfortune of those affected by his want of accuracy. If there is nothing in the will itself, from which a particular inference may reasonably be drawn, Courts cannot make such inference, however the result produced by it may square with their abstract notions of fitness and propriety. In Ex parte The Earl of Illchester, 7 Vesey, Jr. 377, the Master of the Rolls, in remarking on the effect of a subsequent testamentary paper, which, though legally ineffective to accomplish the testator's object in making it, was argued to be sufficient to produce the revocation of a former will, makes some observations expressive of the views now meant to be conveyed by us. "This instrument," says he, "has no words of direct revocation, nor any other indication to revoke, except by a new appointment. It is contended, however, that the intention so indicated ought to prevail; and that the codicil, though not effectual as to the appointment of the guardianship, constitutes a revocation. And, if an *intention absolutely to revoke* the first appointment *could with certainty* be collected from the design to substitute another guardian, it ought to be held a revocation of the first appointment; for, if I am right, the Court has before it an instrument capable of operating as a revocation, *if a revocation be contained in it; as it would if the intention was sufficiently manifested.* But the question is, whether that was the substantive, direct object, or only as an incidental and necessary part of the ultimate object; and whether it would ever have been entertained except with a reference to that. A new devise might be expressed so as to show absolutely, and at all events, an intention to annul the former. *But where there is nothing but the mere fact of a new devise, the intention to revoke can only be considered with reference to the new devise, and* as the testator means to give effect to it; and *if the instrument is so made as to be incapable of operating, I cannot conceive how an instrument, inoperative as to its direct purpose, can give effect to an intention of which I know nothing but by that purpose.* I know nothing of *this* intention, but by the manifestation of the other. There is no LEGAL CERTAINTY. The statute has prescribed the mode by which the intention to appoint a guardian can be effectually shown. If that is not pursued, *he does not furnish complete evidence of* his intention." So in the case before

us. There is no new disposition of the real estate devised by the will of 1821, in that of 1835, and there is no sufficient evidence of an intent to make a different disposition, adequate to work a revocation. It is obvious that if the testator, in making his new disposition, intended to revoke his old will *in toto*, he equally intended the new one to be a complete substitute for it as to *all* his estate. The last was his "substantive and direct object," the first was only "an incidental and necessary part of the ultimate object;" and "I cannot conceive how an instrument, inoperative as to its *direct purpose*, can give effect to an intention of which I know nothing *except by that purpose*." He has failed in sufficiently manifesting his primary intention. The will in *this* respect has no legal certainty : Bradford *v.* Bradford, ante. His secondary intention to revoke his more perfect will, arises by legal implication from the incompatibility of his new and old disposition. It springs into existence with its primary, and perishes with it. The direct purpose failing, the consequent one, of which we know nothing but by that purpose, fails likewise, and most justly too ; for who can peruse these papers, and hesitate in believing that Thomas Bradford never contemplated changing the purposes of his will of 1821 by that of 1835, except on the supposition that the latter covered his whole estate ?

There is a class of cases in which it has been held that an instrumental act of a testator *not a will*, inconsistent with the dispositions of his prior will, even though such an act be inoperative for want of certain legal requisites to its validity, will effect a revocation, being respected as indications of intention, though specifically inoperative. Thus, imperfect conveyances by a deed of feoffment without livery of seisin, and by a deed of bargain and sale of the freehold, without enrolment, are nevertheless effectual revocations : Viner's Abr. tit. *Dev.* (P.) pl. 6 ; Sparrow *v.* Hardcastle, 3 Atkyns, 803 ; Shore *v.* Parke, 5 T. R. 124 ; Hicks *v.* Moore, Ambler, 215 ; Beard *v.* Beard, 3 Atk. 72.

So if a will devising land be executed and attested, so as to have an existence as a will, though from circumstances extrinsic it be rendered void, it may still effect a revocation : Roper *v.* Radcliffe, 1 Bro. C. C. 450 ; 2 Eq. Cas. Abr. 771, pl. 9 ; Ellis *v.* Smith, 1 Ves. Jr. 17. In Sparrow *v.* Hardcastle, best reported in 7 Durnf. and East, 412, Lord Hardwicke declares an imperfect conveyance to be a revocation, because it imports an *intention of altering the condition of the estate*." It affords an indication to do that, which by a positive rule of law is an act of revocation. But in all cases of this kind,

there is no difficulty in ascertaining clearly the intent with which the act is done. A conveyance by the testator of land previously devised, or a new and perfect devise of it to another devisee, leaves no room to doubt as to the intent of the actor. It is done with the view of making a new disposition of the estate, which intent is manifested from the instrument. But the will of 1835 here is a perfectly valid act. The difficulty under it arises from the want of demonstrative evidence of its being executed with the end and intent assumed for it in the argument. On this branch of the decision, however, enough has been heretofore said. On the main question, therefore, of the case, the Court are with the appellant, being of opinion, that the will of 1835 being but a testamentary disposition of the testator's personal estate, and containing no complete evidence of an intention in the testator to revoke the former disposition of his estate, real and personal, is but a *pro tanto* revocation of the will of 1821.

The objection that the will of 1821 is inefficacious, because not signed by the testator at the end thereof, admits of two answers. First, being a will executed before the Act of the 8th April, 1833, the legality of its execution must be judged of by the law as it was when it was executed, and not as it was at the death of the testator: Mullin *v.* Kelly, 5 Watts, 399. In the second place, the will and first codicil are both signed by the testator at the end thereof, the last codicil being alone unsigned. If the objection possessed any force, it would exclusively apply to that.

The question whether the Register can or cannot admit to probate a will passing only lands, is not the true point of this case; although, seeing lands are assets applicable to the payment of debts, it would seem he could and ought. The question here is, whether one of several testamentary papers, forming in the aggregate the entire will of a testator, can be admitted to probate, after one of these papers has been in the first instance propounded and admitted to probate as his will? And of the affirmative of this, can a doubt be entertained? Suppose by one paper, a testator bequeaths one part of his personalty; by a second another part, by a third another; by a fourth he devises one part of his real estate, and by a fifth another. Do not all these papers together form his will? If presented together, would not they be entitled to probate as such? Any number of testamentary papers, whatever may be their relative date, or in whatever form they may be (so that they are all clearly testamentary papers), may be admitted to probate, as *altogether* containing the will of the deceased: Williams

on Executors, 80; Sandford *v.* Vaughan, 1 Phill. 128; Harley *v.* Bagshaw, 2 Phill. 38; Marterman *v.* Maberly, 2 Hagg. 235; 8 Vin. Abr. *Devise*, (A. 3.) Now if this is sound doctrine, where all the papers are propounded at once, why, if one testamentary paper is suppressed from fraud, accident, or ignorance, when probate is first granted on the others, should not the parties in interest be permitted, at a subsequent period, when such suppressed paper is either discovered, or the necessity for its probate becomes manifest, have leave to prove it as part and parcel of the testator's will? My mind suggests no reason why there could exist a doubt on the subject.

Nor do we deem it necessary, as has been insisted, to revoke the letters granted on the will of 1835, preparatory to the admitting the will of 1821 to probate, as composing with the former the entire testament of the decedent. The will of 1835 is not only effective as to personal estate, but is equally so as to the appointment of executors; and revokes the appointment of those named in the will of 1821. If, therefore, the letters testamentary granted on the will of 1835 should now be revoked, preparatory to the admission of that of 1821 to probate, they must again be issued to the same parties. A revocation of the original letters would be nugatory certainly, and we think it not legally required. The paper now admitted to probate is but an addition to that on which the letters were granted, rendering that complete which was before imperfect. It may impose additional duties on the executors, but it does not otherwise interfere with their functions, which are derived from a testamentary paper, posterior in execution to the paper now admitted to probate, viz. the will of 1835.

The probate of this Court decides merely on the factum of the instrument. The effect of the probate; how far it concludes, or does not conclude other tribunals, is for those Courts to determine, when questions, involving the legal effect of such probate, are presented to them: Smith *v.* Bonsall, 5 Rawle, 80. All we decide is, that the paper writing called the will of 1821 ought to be admitted to probate as part and parcel of the testament of Thomas Bradford, deceased, forming, with the paper writing called the will of 1835, the final testamentary dispositions, by the decedent, of his estate, real and personal.

> Decree of the Register reversed, and probate of the will of 1821 granted.